UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

ARELIS ARAUJO, et al.

                Plaintiffs,

             -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                Defendant.

20 Civ. 7032 (LGS)

OPINION AND ORDER

------------------------------------------------------------

LORNA G. SCHOFIELD, United States District Judge:

        Plaintiffs, parents on behalf of 33 students, move for a temporary restraining order and preliminary injunction, alleging violations of the "stay-put" provision of the Individuals With Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1415(j), due to Defendant the New York City Department of Education's ("DOE") failure to fund tuition and services for the students at the International Institute for the Brain ("iBRAIN") during the pendency of their challenges to the students' Individualized Education Programs ("IEPs"). For the reasons stated below, the motion is granted in part.

## I. BACKGROUND

        Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education." *T.K. v. New York City Dep't of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016) (quoting 20 U.S.C. § 1400(d)(1)(A)). The "centerpiece" of the IDEA's education delivery system is the IEP. The IEP is the result of collaborations between parents, educators, and representatives of the school district and "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 224 (2d Cir. 2012).

        The IDEA contains procedural safeguards that enable parents and students to challenge

the local educational agency's IEP decisions. 20 U.S.C. § 1415; *see also Mr. P v. W. Hartford Bd. of Educ.*, 885 F.3d 735, 741 (2d Cir.), *cert. denied sub nom. Mr. P. v. W. Hartford Bd. of Educ.*, 139 S. Ct. 322 (2018). New York has implemented a two-tier system of administrative review. N.Y. Educ. Law § 4404. First, parents are entitled to a due process hearing, which entails review of the IEP before an impartial hearing officer ("IHO"). *Id.* at § 4404(1). Next, parties aggrieved by the outcome of the due process hearing may pursue an appeal before a state review officer ("SRO"). *Id.* at § 4404(2).

The IDEA also contains a "stay-put" provision. 20 U.S.C. § 1415(j). That provision provides that "during the pendency of any proceedings conducted pursuant to [20 U.S.C. § 1415] . . . the child shall remain in the then-current educational placement of the child." *Id.* "In other words, the provision seeks to maintain the educational status quo while the parties' dispute is being resolved. Thus, a school district is required to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 659 (2d Cir. 2020) (internal quotation marks and citations omitted).

Plaintiffs allege they initiated due process complaints in July 2020, seeking funding for placement at iBRAIN for the 2020-21 school year, as well as funding for transport to and from school. Plaintiffs claim that in June 2020, they completed forms provided by Defendant to request pendency at iBRAIN ("Pendency Forms"), but that despite doing so, Defendant has neither provided pendency funding at iBRAIN nor provided any other pendency placement or services. Each of the students is enrolled at iBRAIN for the 2020-21 school year.

## II. STANDARD

In a recent IDEA case, the Second Circuit stated that "[o]rdinarily, to obtain a preliminary injunction, the movant has to show (a) irreparable harm and (b) either (1) likelihood of success

2

on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 529 (2d Cir. 2020) (internal quotation marks omitted). The standard for entry of a TRO is the same as for a preliminary injunction. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992) (quoting with approval the district court's statement that it would "examine the government's application by the traditional standards which govern consideration of an application for a temporary restraining order which are the same standards as those which govern a preliminary injunction"); *accord Basank v. Decker*, 449 F. Supp. 3d 205, 210 (S.D.N.Y. 2020) (collecting cases).

The Second Circuit has held that "where the IDEA's stay-put provision is implicated, the provision triggers the applicability of an automatic injunction designed to maintain the child's educational status quo while the parties' IEP dispute is being resolved." *Ventura*, 959 F.3d at 529. That rule comes from *Zvi D. by Shirley D. v. Ambach*, in which the Second Circuit explained that the stay-put provision "is, in effect, an automatic preliminary injunction," and that the statute "substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships." 694 F.2d 904, 906 (2d Cir. 1982). "The automatic injunction takes effect only after the pendency placement determination is made." *Cruz v. New York City Dep't of Educ.*, No. 19 Civ. 856, 2020 WL 1322511, at *8 (S.D.N.Y. Mar. 20, 2020) (quoting *Angamarca v. New York City Dep't of Educ.*, No. 19 Civ 2930, 2019 WL 3034912, at *6 (S.D.N.Y. July 11, 2019)).

### III.   DISCUSSION

The students in this action fall into three groups. First, the parties do not dispute that

thirteen of the students have pendency at iBRAIN pursuant to (1) prior pendency orders, (2) federal court orders or (3) findings and decisions following a hearing on a due process complaint from a prior school year.  Second, the parties dispute whether fifteen students can claim pendency at iBRAIN under an "operative placement" theory -- that, "at [the] time [the parents initiated the due process disputes] and since that time, [the students'] functioning educational placements have been at iBRAIN."  Third, the parties dispute whether past orders and administrative proceedings preclude pendency for the five remaining students.

    A.    **Thirteen Students Entitled to Pendency**

Defendant agrees that thirteen students are entitled to pendency funding at iBRAIN: Z.A.; K.A.; J.B.; A.C.; O.C.; S.C.; S.J.D.; A.L.; Y.K.M.; L.N.; E.P.; L.V.F. and W.R.  Defendant argues that interim relief is not appropriate for these students because they "have not submitted any documentation or information about whether or not the students are receiving services" as required by DOE policy.  In support of such policy, Defendant provides an affidavit from Sapna Kapoor, the head of the Impartial Hearing Order Implementation Unit at DOE, stating that DOE requires proof of tuition and service fees before payment will be made, as well as information as to whether any portion of the students' attendance is remote due to COVID-19.  Kapoor states that Plaintiffs have submitted no such documentation for the 2020-21 school year, but that when it is submitted, pendency payments will issue for these thirteen students.  Plaintiffs respond, on information and belief, that such documentation has been produced.

Plaintiffs seek immediate vindication of their undisputed rights to pendency funding via preliminary injunction.  They correctly note that the stay-put provision typically operates as an "automatic injunction" foreclosing consideration of irreparable harm and the other factors of the traditional preliminary injunction inquiry, and thus that an injunction should issue as a matter of course.  *Ventura*, 959 F.3d at 529.  Accordingly, a preliminary injunction granting pendency

funding for the thirteen students the parties agree have pendency at iBRAIN is warranted.

Defendant nonetheless encourages consideration of the traditional preliminary injunction factors, particularly irreparable harm. Defendant cites *Cohen v. New York City Dep't of Educ.*, in which the court observed that the automatic injunction rule has "less purchase" in circumstances where plaintiffs do not face a meaningful threat to their educational stability. No. 18 Civ. 11100, 2018 WL 6528241, at *2 (S.D.N.Y. Dec. 12, 2018). Defendant notes that "the services at issue [] are seemingly all being provided and there is no allegation that any student will go without any service," and thus that interim relief is not warranted.

Defendant's reliance on *Cohen* is unavailing as I find the many cases to the contrary to be more persuasive. *See Abrams v. Carranza*, No. 19 Civ. 4175, 2019 WL 2385561, at *5 (S.D.N.Y. June 6, 2019) (in declining to apply *Cohen*, observing that the "Second Circuit has expressly stated that the IDEA 'substitutes an absolute rule in favor of the status quo for the court's discretionary consideration' of the preliminary injunction actors" (quoting *Zvi D.*, 694 F.2d at 906)); *Cruz*, 2019 WL 147500, at *9 ("this Court does not read *Cohen* as seeking to overturn well settled law that irreparable harm need not be shown to obtain injunctive relief regarding pendency"); *see also Navarro Carrilo v. New York City Dep't of Educ.*, 384 F. Supp. 3d 441, 458 (S.D.N.Y. 2019), *vacated and remanded sub nom. on separate grounds Ventura*, 959 F.3d 519 (2d Cir. 2020) ("the statement in *Cohen* is dicta – *Cohen* was dismissed for lack of standing; thus, the rumination on the injunctive relief standard is in no way binding on this Court"); *Soria v. New York City Dep't of Educ.*, 397 F. Supp. 3d 397, 405 (S.D.N.Y. 2019) ("Plaintiffs need not demonstrate irreparable harm in order to prove their entitlement to injunctive relief with respect to pendency"); *Melendez v. New York City Dep't of Educ.*, 420 F. Supp. 3d 107, 118 (S.D.N.Y. 2019). Plaintiff's arguments for consideration of irreparable harm under *Cohen* are thus unpersuasive principally in light of (1) the Second Circuit's statement that the stay-put provision

has the effect of an automatic injunction and (2) secondarily, the weight of persuasive District Court authority holding opposite to *Cohen*.

    **B.**    **Fifteen Students Claiming "Operative Placement" at iBRAIN**

Plaintiffs claim that fifteen students are entitled to pendency funding at iBRAIN because they have been enrolled at iBRAIN since their due process complaints were filed: Y.R.M.; M.B.; A.J.C.; R.D.; J.E.; M.G.; S.H.; Z.K.; A.M.; A.N.; R.P.; C.P.; M.R.; L.S. and R.Z. Plaintiffs' theory is: (1) that they invoked the stay-put provision for pendency funding for these students by filing their due process complaints; (2) by enrolling the students at iBRAIN, they established it as the students' "operative placement" and (3) that "operative placement" established iBRAIN as the students' "then-current educational placement" for pendency funding. 20 U.S.C. § 1415(j). The parties' moving papers do not establish where these fifteen students attended school prior to enrolling at iBRAIN for the 2020-21 school year. Defendant notes that some were located at a different school, the International Academy of Hope ("iHope"), but Plaintiffs provide no data for others.

Regardless, Plaintiffs' theory fails because Plaintiffs have not shown that the enrollment of these fifteen students at iBRAIN was agreed upon between their parents and DOE. A "parent cannot unilaterally transfer his or her child and subsequently initiate an IEP dispute to argue that the new school's services must be funded on a pendency basis," because permitting pendency on such grounds "effectively renders the stay-put provision meaningless by denying any interest of a school district in resolving how the student's agreed-upon educational program must be provided and funded." *Ventura*, 959 F.3d at 536. This accurately describes what has occurred with respect to these fifteen students. As such, Plaintiffs' arguments on this point are foreclosed by *Ventura*.

Plaintiffs attempt to distinguish *Ventura* on the basis that, in that case, DOE had explicitly offered another school (iHope) to the parents, who nonetheless chose to send their child to

iBRAIN. Plaintiffs argue that because Defendant has not yet provided the students with any pendency placement, *Ventura* is inapplicable. This argument is unpersuasive. If Plaintiffs' issue is that no timely pendency determination has been made, then they can move to obtain such relief. However, under *Ventura*, they may not unilaterally alter students' enrollments and then claim pendency funding on that basis:

> Parents who are dissatisfied with their child's education can unilaterally change their child's placement during the pendency of review proceedings and can, for example, pay for private services, including private schooling. They do so, however, at their own financial risk. They can obtain retroactive reimbursement from the school district after the IEP dispute is resolved . . . .

*Ventura*, 959 F.3d at 526; *see also Mackey v. Board of Educ.*, 386 F.3d 158, 160 (2d Cir. 2004) ("Parents should, however, keep in mind that if they 'unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local officials, [they] do so at their own financial risk.'" (quoting *Sch. Comm. v. Dep't of Ed.*, 471 U.S. 359, 373–74, (1985)).

### C. The Five Remaining Students

The parties dispute whether the remaining five students -- J.C., A.D. (Mason), M.C., N.R. and A.D. (Polanco) -- are entitled to pendency. Plaintiffs do not contest that none of the five students has provided a valid pendency order or other documentation evidencing a right to pendency at iBRAIN. Plaintiffs instead claim that "[Defendant's] failure to offer a pendency placement was a violation of each student's rights pursuant to [the stay-put provision] and entitled each student to a pendency placement at iBRAIN under the operative placement doctrine." Plaintiffs' arguments as to these five students thus mirror the arguments made under its "operational placement" theory for the fifteen students above -- that the parents could choose to place the students at iBRAIN unilaterally, without input from Defendant, and then recover the costs of such placement. Pendency funding for such unilateral placement fails under *Ventura*.

7

*See* 959 F.3d at 536.

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction and temporary restraining order is GRANTED in part.  It is hereby ORDERED that by October 14, 2020, Defendant shall provide pendency funding for those thirteen students who the parties agree have pendency at iBRAIN.  Such funding shall be in accordance with the (1) prior pendency orders, (2) federal court orders or (3) findings and decisions following a hearing on a due process complaint from a prior school year creating such pendency.  Plaintiffs' motion is DENIED with respect to the remaining twenty students.

The Clerk of Court is respectfully directed to close the docket entry at # 6.

Dated:   September 24, 2020
         New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**