UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ARELIS ARAUJO, et al.,                               :
                                    Plaintiffs,      :
                                                     :          20 Civ. 7032 (LGS)
                   -against-                         :
                                                     :          OPINION AND ORDER
NEW YORK CITY DEPARTMENT OF                          :
EDUCATION,                                           :
                                    Defendant.  :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Plaintiffs in this action originally sought funding, pursuant to the Individuals with

Disabilities Education Act ("IDEA") pendency or "stay-put" provision, 20 U.S.C. § 1415(j), for

thirty-three children's educational placements at iBRAIN.  All of the pendency claims asserted in

the original complaint have now been resolved.  While the case was pending, a dispute arose

about the funding of special transportation expenses for one student, W.R., the child of Plaintiff

Cynthia Ramos.  Plaintiffs filed an Amended Complaint adding a claim to that effect, and the

parties filed cross-motions for summary judgment.  For the reasons below, both motions are

granted in part and denied in part.

**I.      BACKGROUND**

The following summary is taken from the parties' Rule 56.1 statement and other filings

on these motions.  The facts are either undisputed or based on evidence in the record.

On September 24, 2020, Ramos's original pendency claim asserted in Plaintiffs' initial

Complaint was resolved.  Defendant was directed to provide pendency funding for the placement

of W.R., among others, at iBRAIN for the 2020-2021 school year.  On or about June 23, 2021,

Ramos notified Defendant of her intent to unilaterally place W.R. at iBRAIN for the 2021-2022

school year.  On July 8, 2021, Ramos filed a Due Process Complaint ("DPC"), alleging that the

proposed placement in W.R.'s IEP was inappropriate and seeking funding for W.R.'s placement at iBRAIN for the 2021-2022 school year.  At the time the DPC was filed, W.R.'s pendency placement was iBRAIN, and that placement included specialized transportation.  On or about July 27, 2021, Ramos entered into a contract (the "Contract") with Sisters Travel and Transportation, LLC ("Sisters"), for specialized transportation for W.R. to and from iBRAIN for the 2021-2022 school year.

On May 15, 2022, Impartial Hearing Officer ("IHO") John Farago issued a Findings of Fact and Decision ("FOFD") resolving Ramos's DPC for W.R.'s 2021-2022 school year, which neither party appealed.  The parties dispute whether Defendant New York City Department of Education ("DOE") is obligated by the FOFD to pay for W.R.'s transportation expenses for the period from May 15, 2022, through June 30, 2022.  "According to the three-part *Burlington*/*Carter* test, [Ramos] will be entitled to reimbursement if (1) the school district's proposed placement violated the IDEA, (2) the parents' alternative private placement was appropriate, and (3) equitable considerations favor reimbursement."  *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014).  On the first element of the *Burlington*/*Carter* test, the FOFD found that Defendant denied W.R. a free appropriate public education for the 2021-2022 school year, in violation of the IDEA.  But the FOFD's findings were not so one-sided on the other two elements.

On the second *Burlington*/*Carter* element -- whether the parents' alternative private placement was appropriate -- the FOFD first found that the placement at iBRAIN was appropriate.  On that basis, the FOFD found that Ramos "prevail[ed] under the second *Burlington*/*Carter* element with respect to tuition funding."  But the FOFD distinguished "tuition funding" from "private transportation funding."  The FOFD said that the latter "is, once again,

2

not as straightforward." The FOFD continued: "As they similarly chose to do in both prior

impartial hearings before me, the family -- represented by counsel -- again failed to adduce

sufficient evidence compelling the conclusion that such transportation services should be funded

in the amounts they have requested." The FOFD acknowledged that the parents had offered a

"scintilla" of evidence beyond simply submitting the Contract with Sisters. But the FOFD

continued:

> That said, I do not find this testimony sufficient to rubber-stamp the family's
> demand that the district be responsible for funding the transportation costs as
> reflected in the contract, which elements of which, once again are not, on their
> face, reasonable. Such evidence is needed because I am not an expert on market
> rates or practices for specialized transportation services or what the district's costs
> are for comparable transportation, either through Medicaid or otherwise.
> Enlightening the decision maker in areas such as this is one of the core purposes
> of an evidentiary proceeding. Absent such an undertaking by the family, I here
> simply order that the district fund the costs of the student's transportation services
> during the 2021-2022 school year at the lower of either (a) the Medicaid rate, or
> (b) a fair market rate as demonstrated to the district's Implementation Unit, based
> on comparable transportation, utilizing a comparable vehicle with comparable
> accommodations for transportation services to and from the private program that
> were actually provided to the student.

> Finally I find that the family has provided no evidence with respect to this case or
> to general practice in the medical transportation industry that the actual provision
> of transportation is, as they claim, "irrelevant" to the entitlement to payment to a
> transit provider. The authority they cite addresses contracts that had been upheld
> and payment for which had been ordered, in final administrative determinations.
> It does not create a dispositive presumption that, when an IHO or SRO weighs the
> equities in the course of issuing such a final order, they may not look into the
> terms to which the family agreed as an equitable component of the case.

Then turning to the third *Burlington*/*Carter* element, equitable considerations, the FOFD

concluded, "There are no equitable factors that suggest, let alone compel, a reduction or

elimination of an otherwise appropriate award of tuition relief with respect to any aspect other

than the transportation contract addressed immediately above." In its conclusion, the FOFD

ordered Defendant "to reimburse the family for their out of pocket tuition costs for the child's

placement (inclusive of the costs of related services) during the 2021-2022 school year" and separately repeated its order that Defendant fund W.R.'s transportation costs at the lower of the two rates above for services "actually provided" to the student. Neither Ramos, iBRAIN nor Sisters maintains records that demonstrate the school days on which W.R. was actually transported to and/or from iBRAIN.

## II.   LEGAL STANDARD

In ordinary civil cases, when parties cross-move for summary judgment, the Court analyzes the motions separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Schwebel v. Crandall*, 967 F.3d 96, 102 (2d Cir. 2020). Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for a nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).[1]

Summary judgment practice in IDEA cases is slightly different.

Instead of dispute resolution, a motion for summary judgment can serve as an aid to the court within a statutory scheme whose purpose is to ensure that children with disabilities receive the educational benefits to which they are entitled. The court's inquiry is twofold:  first, it reviews the state's compliance with IDEA procedures and, second, the court determines if the IEP created through those procedures was reasonably calculated to enable the child to receive educational benefits. Though the court must show deference to administrative board findings, the court is also empowered to conduct an independent review of the record as a whole and even hear additional evidence. The court's inquiry is a results-based standard in many respects, concerned more with a just outcome for a disabled student than with judicial efficiency.

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

*T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009); *accord Donohue v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 1942, 2021 WL 4481344, at *8 (S.D.N.Y. Sept. 30, 2021).

That said, "the role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed." *T.Y.*, 584 F.3d at 417.  "While the district court must base its decision on the preponderance of the evidence, it must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *A.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165, 171 (2d Cir. 2009); *accord Donohue*, 2021 WL 4481344, at *8.

## III.   DISCUSSION

### A.  Ramos's Claims and Basis for Jurisdiction

In the Amended Complaint, Ramos asserts claims under both the IDEA itself and 42 U.S.C. § 1983.  The Amended Complaint could be construed as asserting any or all of four potential claims.

First, the Amended Complaint might be construed as challenging the FOFD itself pursuant to 20 U.S.C. § 1415(i)(2).  That statutory subsection provides that a "party aggrieved by the findings and decision made under" § 1415 can challenge them in federal court.  Any such claim would be barred, however, by Plaintiffs' failure to exhaust administrative remedies by appealing the FOFD.  20 U.S.C. § 1415(i)(2) (only one "who does not have the right to an appeal" or who has received an adverse decision on appeal can bring a civil action under that subsection); *see also J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 112 (2d Cir. 2004) ("It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court."); *accord L.B. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 6626, 2023 WL 1779550, at *5 (S.D.N.Y. Feb. 6, 2023).

5

Second, the Amended Complaint appears to assert a claim under the pendency provision of the IDEA, 20 U.S.C. § 1415(j).  That provision requires funding of the student's "then-current educational placement" "during the pendency of any proceedings conducted pursuant to [§ 1415]."  That claim also would fail because the current dispute concerns funding only from May 15, 2022, until June 30, 2022.  There were no pending proceedings concerning W.R.'s 2021-2022 placement after the DPC was resolved by the FOFD on May 15, 2022.

Third, the Amended Complaint might be read to seek enforcement of the Court's prior Order, dated September 24, 2020, awarding Ramos pendency funding.  That Order states, "Defendant shall provide pendency funding for those thirteen students who the parties agree have pendency at iBRAIN.  Such funding shall be in accordance with the (1) prior pendency orders, (2) federal court orders or (3) findings and decisions following a hearing on a due process complaint from a prior school year creating such pendency."  To the extent that Order applies to the 2021-2022 school year at all, the Order requires only *pendency* funding -- i.e., funding "during the pendency of" proceedings under § 1415.  The reference to decisions after hearings concerning prior school years does not alter the definition of pendency, but rather simply recognizes that that is one way of establishing pendency.  A claim based on enforcement of the September 24, 2020, Order fails for the same reason a claim under § 1415(j) fails.

Fourth, the final and only viable claim arguably asserted in the Amended Complaint is a claim under § 1983, arguing that Defendant denied W.R. rights protected by the IDEA by failing to implement the FOFD.  IDEA implementation violations generally are redressable through § 1983 actions.  *See Rutherford v. Fla. Union Free Sch. Dist.*, No. 16 Civ. 9778, 2019 WL 1437823, at *25, *38-41 (S.D.N.Y. Mar. 29, 2019).  Ordinarily, plaintiffs must plead and prove a "policy or custom" that caused a deprivation of their federal rights to hold a municipality liable

under § 1983.  *Id.* at *39.  However, because Plaintiffs did not plead or raise that argument, it is unnecessary to address it.  *See, e.g.*, *L.B.*, 2023 WL 1779550, at *6 n.22.

**B.  Defendant's Obligations Under the FOFD**

Defendant's interpretation of the FOFD is largely correct, and Plaintiffs' largely incorrect.  Contrary to Plaintiffs' argument, the FOFD explicitly declines to order Defendant to pay transportation costs to the full extent of Ramos's Contract with Sisters.  The FOFD found that the record did not support a finding that the Contract was "reasonable," and that equitable considerations did not support requiring Defendant to reimburse Ramos for the full Contract amount.  The FOFD ordered Defendant to fund *all* of Ramos's out-of-pocket costs for tuition, but explicitly adopted a different formula for transportation costs.  The FOFD expressly acknowledged that it had ordered "a reduction or elimination" of the requested relief with respect to transportation costs, but not for tuition.  The FOFD also squarely rejected the argument, which Plaintiffs advance again here, that W.R.'s actual attendance and utilization of transportation is "irrelevant."  The sole case on which Plaintiffs rely for this proposition is distinguishable, because there the relevant IHO orders required Defendant to pay for all of the students' transportation services.  *Abrams v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 5085, 2022 WL 523455, at *1-2 (S.D.N.Y. Feb. 22, 2022).  Here, the IHO specifically ordered Defendant to pay some amount less than all of W.R.'s transportation expenses.

Plaintiffs' counsel recognized that the interpretation Defendant now advances is correct in a letter dated September 16, 2022.  Plaintiffs' counsel stated, "In W.R.'s underlying administrative proceeding, the IHO specifically ordered the DOE to reimburse transportation costs ONLY for days that W.R. physically rode the bus."  Because "the transportation company [could not] produce the record(s) necessary to determine which days W.R. actually rode the

bus," Plaintiffs requested, and Defendant consented to, an extension of time so that Plaintiffs could attempt to locate adequate documentation.

Plaintiffs' counterarguments are unpersuasive.  First, Plaintiffs argue that Defendant distorts the totality of the FOFD by focusing on the words "that were actually provided" in the phrase, "for transportation services . . . that were actually provided."  The rest of the FOFD, quoted at length above and in Plaintiffs' memorandum of law, provides important context for the FOFD's deliberate reduction of the relief Plaintiffs requested.  In context, the FOFD specified that payment was required only for services "actually provided," because the FOFD rejected the argument that actual utilization of the services is "irrelevant."

Second, Plaintiffs argue that Defendant's position is inconsistent with its pendency obligations, which are designed to ensure consistency and continuity in the education of children with disabilities.  That argument, and the pendency cases Plaintiffs cite, miss the mark because the current dispute does not concern pendency.  Defendant fully funded W.R.'s pendency placement while Ramos's DPC was adjudicated.  Ramos now takes issue with the FOFD's rejection of Ramos's request for the same level of funding going forward.  Ramos did not appeal the FOFD's finding that the transportation costs previously funded under pendency are unreasonable, so Ramos cannot challenge that finding now.

Third, Plaintiffs' argument that W.R.'s pendency placement has not changed, and is still iBRAIN, is correct but irrelevant.  The FOFD did find W.R.'s placement at iBRAIN to be appropriate.  W.R.'s continued placement at iBRAIN means only that, if Ramos initiates IDEA proceedings in the future, W.R. may be able to remain at iBRAIN during the pendency of those new proceedings.  *See* 20 U.S.C. § 1415(j).  If there were further proceedings, W.R.'s tuition and related services -- including transportation -- would be funded at the levels required by the

FOFD, the last pendency-setting event.  *See S.S. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 9394, 2021 WL 3188323, *1 (S.D.N.Y. July 28, 2021) (noting that "an unappealed administrative decision" establishes a student's pendency placement).

Fourth, Plaintiffs' arguments based on Ramos's Contract with Sisters are unavailing, just as they were before the IHO.  Plaintiffs again rely on *Abrams*, in which the court directed Defendant to pay for the transportation services the plaintiff had incurred pursuant to a contract with Sisters, regardless of whether those services were used.  2022 WL 523455, at *8-9.  Again, *Abrams* is inapposite because the IHO there ordered Defendant to pay for all of the plaintiff's transportation expenses.  The IHO in *Abrams* did not deliberately limit Defendant's payment obligations due to the unreasonableness of the expenses.  The IHO here did not purport to "alter" the Contract in the FOFD, as Plaintiffs suggest.  The FOFD simply declined to require Defendant to foot the entire bill for that Contract, finding that the record showed the amounts required were not reasonable.  Plaintiffs also argue that the Contract's structure makes sense -- there are many services one might be required to pay for regardless of whether or how much they are used.  That may be so, but the FOFD did not hold that the Contract is *per se* unreasonable because of its structure.  Rather, in light of all of the circumstances, the FOFD found that the amounts required under the Contract were not reasonable.  Crucially, the FOFD rejected Plaintiffs' argument, pressed again now, that the amounts are automatically reasonable *because* they are specified by the Contract.  In any event, Plaintiffs have not met the IDEA's exhaustion requirement with respect to challenges to the FOFD itself, as opposed to Defendant's implementation of the FOFD.

### C.  Appropriate Relief

Because Defendant correctly interprets the FOFD, and because Plaintiffs concede that they have not submitted evidence of the days W.R. actually used transportation services,

Defendant does not currently have an outstanding obligation to pay for those services.  It may be that W.R. never used transportation services in the relevant period, in which case Ramos is not entitled to reimbursement pursuant to the FOFD.  However, if W.R. did use transportation services during that period, Defendant has offered no reason why Ramos cannot recover reimbursement now, if Ramos can produce adequate documentation.  While Plaintiffs suggest Defendant has invented a documentation requirement in order to thwart W.R.'s statutory rights, the requirement in fact arises from the FOFD.  The FOFD requires at least some evidence of which days W.R. actually used transportation services.  However, the FOFD does not necessarily require formal attendance records, if neither iBRAIN nor Sisters indeed keeps such records.  Affidavits from individuals who interacted with W.R. may suffice.  For clarity, Plaintiffs must provide evidence that W.R. physically traveled to and/or from iBRAIN via an approved transportation service in order to seek reimbursement.  The fact that the Contract defines "PROVIDED SERVICES" to include days in which the services were not used is irrelevant, for all of the reasons discussed above.

## IV.  CONCLUSION

For the foregoing reasons, both parties' cross-motions for summary judgment are GRANTED in part and DENIED in part.  Plaintiffs' motion is denied to the extent that Ramos seeks payment for all transportation services addressed by the Contract, but it is granted to the extent it seeks payment for transportation services provided on days that W.R. was transported to and from iBRAIN.  Defendants' motion is granted and denied to the same extent.  By **September 8, 2023**, Plaintiffs shall file a letter seeking payment of that portion of transportation expenses to which Ramos is entitled and attaching supporting documentation.  As discussed above, that documentation need not take the form of attendance records in the traditional sense as

demanded by Defendant, and may consist of affidavits or other proof of attendance.  By

**September 15, 2023**, Defendant shall file a response stating whether it still disputes its

obligation to make any payment demanded and the grounds for such dispute, or whether it will

make payment.

      The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 124 and 128.

Dated: August 9, 2023
      New York, New York

                                      LORNA G. SCHOFIELD
                            UNITED STATES DISTRICT JUDGE